**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **KAMAR SAMUELS and** | : | **Civil No. 3:13-CV-2922** |
| **MOZELLA McCLENDON** | : | |
| **SAMUELS,** | : | **(Judge Caputo)** |
| | : | |
| **Plaintiffs** | : | **(Magistrate Judge Carlson)** |
| | : | |
| **v.** | : | |
| | : | |
| **POCONO MOUNTAIN** | : | |
| **REGIONAL POLICE** | : | |
| **DEPARTMENT, et al.,** | : | |
| | : | |
| **Defendants** | : | |

**REPORT AND RECOMMENDATION**

I.   **INTRODUCTION**

The plaintiffs in this action, Kamar Samuels and his wife, Mozella McClendon Samuels bring claims alleging that they have been subjected to repeated instances of harassment, racial profiling, and abusive conduct by police officers employed by the Pocono Mountain Regional Police Department (the "Police Department").   In particular, the plaintiffs bring claims relating to citations that Mr. Samuels was issued in July 2011, which he claims were baseless and maliciously issued, and which were subsequently dismissed by the Pennsylvania Superior Court in August 2012 because they were filed beyond the Pennsylvania statute of limitations.

In addition, the plaintiffs allege that the defendants violated their civil rights in

December 2011 when two police officers who had been endeavoring to stop Mr. Samuels's vehicle followed him into his garage with their firearms unholstered, and subjected Mr. Samuels to an unlawful arrest using excessive force, while Mrs. Samuels looked on.  The plaintiffs have named as defendants the Police Department, its police chief, Harry Lewis, and two officers, Robert Miller and David Schmidt.  In addition, the plaintiffs have brought claims for municipal liability against the Police Department and Chief Lewis in his official capacity, and against Tobyhanna Township, Mount Pocono Borough, Tunkhannock Township, and Coolbaugh Township (the municipal defendants shall hereafter be referred to collectively as the "Municipalities").

The defendants have moved to dismiss the complaint, arguing that it is entirely predicated on matters that occurred in the summer of 2011, and is therefore time-barred.  In addition, the defendants observe that the claims relating to 2011 citations bears striking similarity to a separate federal lawsuit that Mr. Samuels brought in this court in 2012, and which has since been dismissed with prejudice.  Accordingly, the defendants assert that any claims relating to the citations should be barred by the doctrine of *res judicata*.  Finally, the defendants contend that the plaintiffs have failed to state a claim for municipal liability, and otherwise that the plaintiffs' claim for punitive damages against the municipal defendants should be dismissed.

Upon consideration, we agree that the plaintiff's claims relating to the 2011 citations that he was issued should be dismissed for failure to state a claim and because these claims are precluded by *res judicata*. However, the plaintiffs' claims relating to Mr. Samuels's December 6, 2011 arrest are not time-barred, and were not brought as part of Mr. Samuels's prior litigation, and therefore not subject to *res judicata*. We also disagree that the plaintiffs' municipal liability claims should be dismissed at this point in the litigation, although we agree that the plaintiffs' claims for punitive damages against the municipal defendants must be dismissed because such damages are unavailable as a matter of law. Accordingly, it will be recommended that the defendants' motion be granted in part and denied in part.

## II.   **BACKGROUND**

The background to this report is taken from the well-pleaded allegations set forth in the complaint. The plaintiffs allege that on June 5, 2011, Mr. Samuels was traveling westbound on Route 940 in Monroe County when he passed two police cars that had pulled over a civilian driver. According to the complaint, after Mr. Samuels drove by, he was stopped by one of the officers, David Schmidt, and "cited for disobedience to traffic control devices at traffic stop". (Compl., ¶ 13.) Mr. Samuels refused to accept the citation. (Id.) Instead, the plaintiffs claim that after Mr. Samuels made some inquiry into the matter, he received three citations by certified mail in mid-

July, 2011, for speeding, careless driving, and for a seatbelt violation. (Id., ¶¶ 14-15.) The plaintiffs claim that these citations were based on malice and ulterior motive against Mr. Samuels, who claims he was stopped three times in a six-month period on suspicion of driving while intoxicated – something Mr. Samuels claims he never did. (Id., ¶ 15.)

After receiving the three citations, Mr. Samuels encountered difficulty in paying the fines that were assessed. Apparently on the basis of an argument that Mr. Samuels got into with staff in a magisterial district judge's office while inquiring into the citations or attempting to satisfy them, Officer Schmidt issued Mr. Samuels a fourth citation for disorderly conduct. (Id., ¶¶ 16-20.) Mr. Samuels pleaded not guilty to this charge, which he claims was also unfounded and resulted from "ulterior motive and malice". (Id., ¶ 20.) What followed were a series of hearings and appeals, ultimately resulting in the Pennsylvania Superior Court setting aside all three traffic citations on the grounds that the tickets had been issued beyond the Pennsylvania statute of limitations. (Id., ¶¶ 29.)

The plaintiffs also bring claims based upon a second incident involving Officers David Schmidt and Robert Miller, and which also stemmed from a traffic incident that began while Mr. Samuels was driving westbound along Route 940. On December 6, 2011, the plaintiff approached a red light, directly behind a police cruiser. (Id., ¶ 30.)

According to the complaint, Mr. Samuels "followed this vehicle for approximately 4 miles on 940W until patrol vehicle pulled off roadway at Jubilee Restaurant and proceeded to pull out behind me." (Id., ¶ 31.) At this point, Mr. Samuels pulled off the roadway in the hopes of avoiding a confrontation with officers, since he had been pulled over three times within the prior year for "no apparent reason" and had been followed numerous other times. (Id., ¶ 32.) Thereafter, the police cruiser passed Mr. Samuels and entered another parking lot, before returning to the road in an effort once again to follow Mr. Samuels's vehicle. (Id., ¶ 33.) This prompted Mr. Samuels to slow his own vehicle to "crawling speed", after which the patrol cruiser began following Mr. Samuels once again. (Id.) After driving another two miles in this fashion, Mr. Samuels pulled to the side of the road, and the patrol vehicle pulled to a stop behind him. (Id., ¶ 34.) Mr. Samuels made two phone calls, which took approximately 75 seconds, after which he returned his vehicle to the roadway and proceeded. The cruiser followed, and drove by as Mr. Samuels approached the entrance to his neighborhood. (Id., ¶ 35.) Before returning to his home, however, Mr. Samuels once again pulled out behind the patrol car in order to make a note of its license number. After obtaining this information, Mr. Samuels drove by the patrol car, and the officer activated his overhead lights. (Id., ¶¶ 36-37.)

Instead of stopping, however, Mr. Samuels "turned around and drove home

with two patrol cars with sirens flashing behind me and entered my garage." (Id., ¶ 38.)   Apparently the plaintiff sought to close the garage door as the officers approached, and Officer Robert Miller ran up to the garage door with his firearm drawn, and broke the garage door in an effort to prevent it from closing.  He then ordered Mr. Samuels to show his hands, and he ordered Mrs. Samuels to "stand down" after she had entered the garage upon hearing the commotion.  (Id., ¶ 39.)   The plaintiffs allege that Officer Miller continued to scream at the Samuels, pushed Mr. Samuels into a patrol vehicle, and then searched him, asking whether Mr. Samuels had drugs in his possession.  (Id., ¶¶ 40-43.)   When Mr. Samuels complained that the handcuffs had been placed on his wrists were too tight, Officer Miller used his Taser on him, causing Mr. Samuels to fall to the ground "screaming in pain and bleeding from various locations." (Id., ¶ 45.)  The plaintiffs allege that Officer Miller, assisted by Chief Harry Lewis, falsified police records and made material misrepresentations about the incident in an effort to obtain a conviction – apparently for disorderly conduct.[1]  (Id.)

---

[1] The plaintiff is not clear about what criminal charges he ultimately faced as a result of the December 6, 2011 incident.  Documents attached to the complaint suggest that Mr. Samuels was charged with multiple offenses – not just with disorderly conduct.  In a court order that the plaintiffs' appended to the complaint, it appears that Mr. Samuels was charged with resisting arrest, fleeing or attempting to elude an officer, and with criminal mischief–damage to property.  Although the plaintiffs indicate that the disorderly conduct charge was later quashed, neither the

During a hearing that was subsequently held on charges that were filed based on this incident, the presiding judge expressed concern that the record showed no clear basis for the officers to have pursued Mr. Samuels in the first place, and concluded that there was no reason for the traffic stop. (Id., ¶ 46.) The plaintiffs have also attached exhibits to the complaint including transcripts from judicial proceedings, and an opinion finding that a disorderly conduct charge filed against Mr. Samuels as part of the incident should be dismissed. (Compl., Exs. A-D.)

Alleging that the conduct of the officers was intentional, reckless, and willful, the plaintiffs claim that they suffered injuries, pain and suffering, emotional distress, and monetary losses stemming from the traffic incident and subsequent arrest. The plaintiffs have brought claims alleging "police misconduct," which appears to be a claim that Officer Schmidt subjected the plaintiff to malicious prosecution with the aid of the District Attorney and Chief Lewis. (Compl., Count I.) The plaintiffs also claim that Mr. Samuels was subjected to an unlawful arrest, and that Officer Miller used excessive force during the incident that occurred in the Samuels' garage. (Id., Counts II and III.) In addition, the plaintiffs bring a claim for municipal liability against the Police Department, Chief Lewis in his official capacity, and each of the

---

plaintiffs nor the defendants address what may have ultimately occurred with respect to the remaining criminal charges that appear to have been filed.

other named municipalities, alleging that these defendants, through Chief Lewis, maintained unlawful policies that encouraged and supported the unconstitutional actions of Officers Miller and Schmidt with respect to the issuance of baseless citations, unlawful arrest, and malicious prosecution of Mr. Samuels.

The defendants moved to dismiss the complaint on December 10, 2013. (Doc. 7.)  The defendants supplemented this motion on December 16, 2013, and filed a brief in support of the motions to dismiss on the same date.  (Docs. 8, 9.)  The plaintiffs filed a timely brief in opposition to the motions on January 2, 2014.  (Doc. 10.)  The defendants declined to file a reply brief in further support of their motions, which are now ripe for disposition.

## III.   STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if the plaintiff fails to state a claim upon which relief can be granted. The moving party bears the burden of showing that no claim has been stated, Hedges v. United States, 404 F.3d 744, 750 (3d Cir.2005), and dismissal is appropriate only if, accepting all of the facts alleged in the complaint as true, the plaintiff has failed to plead "enough facts to state a claim to relief that is plausible on its face," Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007) (abrogating "no set of facts" language found in Conley v. Gibson, 355 U.S. 41, 45–46 (1957) ). The

8

facts alleged must be sufficient to "raise a right to relief above the speculative level." Twombly, 550 U.S. 544, 555. This requirement "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence" of necessary elements of the plaintiff's cause of action. Id. at 556.  Furthermore, in order to satisfy federal pleading requirements, the plaintiff must "provide the grounds of his entitlement to relief," which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir.2008) (brackets and quotations marks omitted) (quoting Twombly, 550 U.S. 544, 555).

In considering a motion to dismiss, the court generally relies on the complaint, attached exhibits, and matters of public record. Sands v. McCormick, 502 F.3d 263, 268 (3d Cir.2007).  The court may also consider "undisputedly authentic document[s] that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] documents." Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir.1993).  Moreover, "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered." Pryor v. Nat'l Collegiate Athletic Ass'n, 288 F.3d 548, 560 (3d Cir.2002); see also U.S. Express Lines, Ltd. v. Higgins, 281 F.3d 383, 388 (3d Cir. 2002) (holding that "[a]lthough a district court

9

may not consider matters extraneous to the pleadings, a document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment."). However, the court may not rely on other parts of the record in determining a motion to dismiss. <u>Jordan v. Fox, Rothschild, O'Brien & Frankel</u>, 20 F.3d 1250, 1261 (3d Cir.1994).

## IV.   **DISCUSSION**

    **A.   The Claims in this Case Relate Not only to the Traffic Citations Issued in July 2011, But Also to Mr. Samuels's Arrest in December 2011 and Subsequent Prosecution.**

At the outset, the defendants seem at times to characterize the plaintiffs' claims as relating exclusively to the three traffic citations that Kamar Samuel received from Officer Schmidt in July 2011. Having construed the complaint in this way, the defendants argue that the claims are untimely, as the citations were issued more than two years before the plaintiffs initiated this action.

In addition to the claims arising out of these traffic citations, however, the plaintiffs have also brought claims relating to the incident that occurred in the Samuels' garage on December 6, 2011, involving Mr. Samuels and Officer Miller, which formed the basis for criminal charges that were brought against Kamar Samuels on or about December 22, 2011, some of which allegedly later resolved in the plaintiffs' favor. (Compl., Ex. A, Court of Common Pleas Order Dated Aug. 9,

2012.) The defendants have not persuasively addressed these claims in their brief, and it is not clear whether they are seeking to have the claims for unlawful arrest and excessive force set forth in Counts II and III of the complaint dismissed. Because the defendants do not clearly address these claims, it is recommended that Counts II and III of the complaint not be dismissed. Instead, we will address the arguments that the defendants make in their brief, which relate to Counts I and IV.

> **B.** **Plaintiff's Malicious Prosecution Claim Relating to Officer Schmidt's Issuance of Traffic Citations in July 2011 Fails as a Matter of Law and is Subject to *Res Judicata***

Defendants move to dismiss the plaintiffs' malicious prosecution claim set forth in Count I on the grounds that the claim was filed more than two years after it accrued, and is therefore barred by the statute of limitations. In addition, the defendants argue that this claim is identical to a claim that Kamar Samuels brought in this court in 2012, and which was dismissed with prejudice. Accordingly, the defendants argue that Count I should also be dismissed because it is barred by principles of *res judicata*.

The plaintiffs have brought their claims in this case under 42 U.S.C. § 1983, a federal civil rights statute. Section 1983 does not create substantive rights. <u>Dique v. New Jersey State Police</u>, 603 F.3d 181, 185 (3d Cir. 2010). Instead, the statute provides a federal cause of action for the violation of a federal right. <u>Id.</u> However, section 1983 does not provide a statute of limitations; instead, state law provides the

statute of limitations that is applicable to a claim brought under § 1983.  Id.  A claim brought pursuant to § 1983 is characterized as a personal-injury claim and is accordingly governed by the applicable state's statute of limitations governing personal-injury actions.  Id.; see also Cito v. Bridgewater Twp. Police Dep't, 892 F.2d 23, 25 (3d Cir. 1989).  In this case, there is no question that Pennsylvania state law is applicable here, and Pennsylvania law mandates a two-year statute of limitations for personal-injury torts.  See 42 Pa. Cons. Stat. Ann. § 5524; see also Sameric Corp. of Delaware, Inc. v. City of Philadelphia, 142 F.3d 582, 599 (3d Cir. 1998) ("[B]ecause Pennsylvania's statute of limitations for personal injury is two years . . . Sameric's [§ 1983] claims are subject to a two-year statute of limitations.").  An action brought pursuant to § 1983 accrues "when the plaintiff knew or should have known of the injury upon which its action is based."  Sameric Corp., 142 F.3d at 599.

The plaintiffs seem to be alleging that the traffic citations that Officer Schmidt issued in July 2011 constituted a form of malicious prosecution, and thus suggest that they are bringing a claim for violations of Kamar Samuels's rights under the Fourth Amendment to the United States Constitution.  To the extent that is the theory under which the plaintiffs are proceeding, the malicious prosecution claim would not be untimely simply because the traffic citations that form the basis for the action were issued more than two years before this action commenced.  The Third Circuit has

explained that claims for malicious prosecution do not accrue until the date on which the criminal proceedings resolve in the plaintiff's favor.  See Rose v. Bartle, 871 F.2d 331, 348 (3d Cir. 1989); see also Deary v. Three Un-named Police Officers, 746 F.2d 185, 197 n.16 (3d Cir. 1984).  Because the plaintiffs have alleged that the traffic citations were not dismissed until August 2012, through an order of the Pennsylvania Superior Court, these cases instruct that Kamar Samuels's claims predicated on the issuance of the citations would not have accrued until the citations were set aside. Because the citations were set aside in August 2012, and because this action was brought less than two years later, any § 1983 claims based on the July 2011 traffic citations would not be time-barred.

However, even if these claims are not time-barred, they nonetheless fail as a matter of law, and are otherwise subject to principles of *res judicata*.

To prove a claim for malicious prosecution under section 1983, a plaintiff must show that: (1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in the plaintiff's favor; (3) the proceeding was initiated without probable cause; and (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered a deprivation of liberty consistent with the concept of a seizure as a consequence of the legal proceeding. Estate of Smith v. Marasco, 318 F.3d 497, 521 (3d Cir. 2003).  To the extent the

plaintiffs attempt to bring a claim for malicious prosecution – under whatever nomenclature they have used to describe this claim – the claim fails at the fifth step, because the plaintiffs have not alleged facts sufficient to show that Kamar Samuels suffered a "seizure" as that terms has been interpreted by the United States Court of Appeals for the Third Circuit in the context of a claim for malicious prosecution.

In DiBella v. Borough of Beachwood, 407 F.3d 599 (3d Cir. 2005), the Third Circuit explained that a plaintiff bringing a claim for malicious prosecution under the Fourth Amendment must demonstrate a seizure as a fundamental element of the claim because "prosecution without probable cause is not, in and of itself, a constitutional tort." Id. at 603 (quoting Gallo v. City of Philadelphia, 161 F.3d 217, 222). Indeed, "[t]he type of constitutional injury the Fourth Amendment is intended to redress is the deprivation of liberty accompanying prosecution, not prosecution itself." Id. As examples of the kinds of seizures that may support a claim for malicious prosecution, the Third Circuit observed that "[p]retrial custody and some onerous types of pretrial, non-custodial restrictions constitute a Fourth Amendment seizure." Id. In contrast, the mere attendance at one's trial on criminal charges does not qualify as a seizure that will support a claim for malicious prosecution. Id.

Furthermore, courts following DiBella have found that the alleged seizure must occur as a result of the malicious prosecution, and "must occur chronologically after

14

the pressing of charges." See Basile v. Twp. of Smith, 752 F. Supp. 2d 643, 659 (W.D. Pa. 2010) (citing Penberth v. Krajnak, No. 3:CV-06-1023, 2008 WL 509174, at *17-*18 (M.D. Pa. Feb. 21, 2008); see also Lopez v. Maczko, No. 07-1382, 2007 WL 2461709, at *3-*4 (E.D. Pa. Aug. 16, 2007).  Because of this chronological requirement, "a 'seizure' for the purposes of a malicious prosecution claim, must occur only as a subsequent after effect of an arrest and filing of charges.  The arrest alone [prior to prosecution] is not enough in this circuit to constitute a seizure." Basile, 752 F. Supp. 2d at 660; see also Penberth, 2008 WL 509714, at *17-*18; Lopez, 2007 WL 2461709, at *3-*4.

In this case, the plaintiffs allege that Mr. Samuels was subjected to malicious prosecution when Officer Schmidt issued three traffic citations to him in July 2011. The plaintiffs do not allege that Mr. Samuels was subject to any further arrest or detention from that time forward based on these citations, and likewise do not claim that Mr. Samuels was deprived of his liberty in any other way prior to the eventual dismissal of the citations in August 2012.  In accordance with DiBella and Gallo, and the district court decisions cited above that follow those cases, we cannot construe the facts alleged in the complaint as plausibly or sufficiently stating a Fourth Amendment seizure for purposes of a federal malicious prosecution claim.  Because of this failure to plead plausible facts on an essential element of this claim, the plaintiffs' claim for

malicious prosecution should be dismissed.

Furthermore, any claims for malicious prosecution and related misconduct relating to the July 2011 traffic citations would fail because these claims are barred by principles of *res judicata*.

"Res judicata, also known as claim preclusion, bars a party from initiating a second suit against the same adversary based on the same 'cause of action' as the first suit." Duhaney v. Att'y Gen. of the United States, 621 F.3d 340, 347 (3d Cir. 2010). Under this doctrine, "a final judgment on the merits precludes the parties or their privies from relitigating issues that were or could have been raised in that action." Allen v. McCurry, 449 U.S. 90, 94 (1980); see also United States v. 5 Unlabeled Boxes, 572 F.3d 169, 173 (3d Cir. 2009). The purposes behind the doctrine is to avoid piecemeal litigation of claims that arise from the same events. Churchill v. Star Enters., 183 F.3d 184, 194 (3d Cir. 1999). The party seeking to invoke claim preclusion must show that there has been "(1) a final judgment on the merits in a prior suit involving (2) the same parties or their privies and (3) a subsequent suit based on the same cause of action." Duhaney, 621 F.3d at 347 (citation omitted).

The defendants observe that in 2012, the Mr. Samuels brought an action in the United States District Court for the Middle District of Pennsylvania against the Police Department, Chief Lewis, and Officer Schmidt that contains nearly verbatim

16

allegations regarding the traffic citations issued in July 2011, which Mr. Samuels characterized in that case as "malicious prosecution." See Kamar Samuels v. Monroe County et al., Civil Action No. 3:12-CV-2320 (M.D. Pa.).  The court dismissed that action, with prejudice, on April 24, 2013. (Id. at Docket No. 20.)  It does not appear that Mr. Samuels appealed this order, which thereafter became final and binding on the parties.  Instead of pursuing an appeal, Mr. Samuels seems simply to have repackaged his claims relating to the citations in the instant action.  This he may not do.

The claims that Mr. Samuels endeavors to bring in Count I this case relating to the citations issued by Officer Schmidt in July 2011 are the very same as the claim asserted in the earlier litigation, which was dismissed with prejudice.  Because these particular claims are essentially identical, were actually litigated in the prior action, were dismissed by a final and valid judgment, and the determination was essential to the disposition of the earlier lawsuit, the legal prerequisites for claim preclusion are fully satisfied, and the plaintiffs' claims for malicious prosecution based upon the issuance of three traffic citations in July 2011 should be dismissed.  Because this is the only claim brought against Officer Schmidt, it will be recommended that this defendant be dismissed from this action.

**B.    The Plaintiffs' Municipal Liability Claims Should Not Be Dismissed at this Point in the Litigation**

The defendants next move to dismiss the plaintiffs' claim for municipal liability against the Police Department, apparently on the grounds that the Police Department and Chief Lewis maintained policies, customs or practices that subjected the plaintiffs to deprivations of their rights, or otherwise caused them to be so subjected.

In Monell v. Department of Social Services of the City of New York, 436 U.S. 658 (1978) ("Monell"), the Supreme Court held that a municipality may be held liable under 42 U.S.C. § 1983 for a constitutional injury that directly resulted from a municipality's policy, custom, or practice. Id. at 695. Accordingly, a Monell claim seeks to impose municipal liability for a constitutional injury that was causally connected to a municipal policy, custom, or practice. See id.; see also Carreno v. City of Newark, 834 F. Supp. 2d 217, 231 (D.N.J. 2011).

"Under Monell, a municipality cannot be subjected to liability solely because injuries were inflicted by its agents or employees." Jiminez v. All American Rathskeller, Inc., 503 F.3d 247, 249 (3d Cir. 2007). Instead, "it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." Id. (quoting Monell, 436 U.S. at 694). It is essential to a Monell claim that there be a "direct causal link between a municipal policy or custom and the alleged constitutional deprivation" in order to

establish municipal liability.  <u>City of Canton v. Harris</u>, 489 U.S. 378, 385 (1989).

Guided by these threshold principles, the Third Circuit Court of Appeals has explained that there are "three situations where acts of a government employee may be deemed to be the result of a policy or custom of the governmental entity for whom the employee works, thereby rendering the entity liable under § 1983:"

> The first is where the appropriate officer or entity promulgates a generally applicable statement of policy and the subsequent act complained of is simply an implementation of that policy. The second occurs where no rule has been announced as policy but federal law has been violated by an act of the policymaker itself. Finally, a policy or custom may also exist where the policymaker has failed to act affirmatively at all, [though] the need to take some action to control the agents of the government is so obvious, and the inadequacy of existing practice so likely to result in the violation of constitutional rights, that the policymaker can reasonably be said to have been deliberately indifferent to the need.

<u>Natale v. Camden County Corr. Facility</u>, 318 F.3d 575, 584 (3d Cir.2003) (internal quotation marks and citations omitted).  Subsequently, the appeals court provided further guidance regarding the ways in which a government policy or custom may be established:

> We have also observed that a government policy or custom can be established in two ways. <u>See Andrews v. City of Philadelphia</u>, 895 F.2d 1469, 1480 (3d Cir.1990). The Plaintiffs may establish a government policy by showing that a "decisionmaker possess[ing] final authority to establish municipal policy with respect to the action" issued

an official statement of policy. Pembaur v. City of Cincinnati, 475 U.S. 469, 481, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986). The Plaintiffs may establish that a course of conduct constitutes a "custom" when, though not authorized by law, "such practices of state officials [are] so permanent and well settled" that they operate as law. Monell, 436 U.S. at 690, 98 S.Ct. 2018. In either instance, the Plaintiffs have the burden of showing that a government policymaker is responsible by action or acquiescence for the policy or custom. Andrews, 895 F.2d at 1480. We have also held that, at a minimum, the government must act with deliberate indifference to the purported constitutional deprivation in order to ground liability. San Filippo v. Bongiovanni, 30 F.3d 424, 445 (3d Cir.1994).

Jiminez, 503 F.3d at 250. In cases where a plaintiff is predicating a Monell claim on an alleged failure to train officers or other employees, the Third Circuit has further explained:

a municipality's failure to train police officers only gives rise to a constitutional violation when that failure amounts to deliberate indifference to the rights of persons with whom the police come into contact. City of Canton, Ohio v. Harris, 489 U.S. 378, 388, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989). We have held that a failure to train, discipline or control can only form the basis for section 1983 municipal liability if the plaintiff can show both contemporaneous knowledge of the offending incident or knowledge of a prior pattern of similar incidents and circumstances under which the supervisor's actions or inaction could be found to have communicated a message of approval to the offending subordinate. See Bonenberger v. Plymouth Township, 132 F.3d 20, 25 (3d Cir.1997).

Montgomery v. De Simone, 159 F.3d 120, 126-27 (3d Cir. 1998). It is "only where

a failure to train reflects a 'deliberate' or 'conscious' choice by a municipality . . . can a city be liable for such a failure under § 1983." <u>Harris</u>, 489 U.S. at 389.  Thus, where <u>Monell</u> claims are based upon an alleged failure to train officers, the municipality's training program must be so inadequate that "in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy [of the current training] so likely to result in the violation of constitutional rights, that the policy makers of the city can reasonably be said to have been deliberately indifferent to the need." <u>Id.</u> at 390.

In this case, the defendants offer little to support their contention that the plaintiffs have failed to state a viable claim for <u>Monell</u> liability.  Instead, the defendants urge the Court to reject the alleged "incorrect[]premise" that Chief Lewis is a "policy maker" for the Police Department.  The defendants do not credibly explain how the court can make such a finding at this early stage of the litigation, and they offer no compelling showing to substantiate their assertion that Chief Lewis may not, under any facts that may be ultimately be proven, be deemed a policy maker.  In the complaint, the plaintiffs have made a number of allegations that Kamar Samuels had been subjected to repeated incidents of racial profiling and other instances of harassment, and that Chief Lewis had been made aware of these allegations.  Moreover, the plaintiffs have alleged that Chief Lewis actively facilitated the filing

of false or malicious charges against Mr. Samuels, even after being made aware of information that police officers within the department were engaging in unconstitutional conduct.  Given the paucity of legal argument in support of the defendants' motion, and finding at this stage of the litigation that the complaint sets forth sufficient allegations to support a claim for municipal liability, it will be recommended that the defendants' motion to dismiss Count IV of the complaint be denied.

### C.    Plaintiffs' Claims for Punitive Damages Set Forth in Count IV Against the Municipal Defendants Should be Dismissed

Finally, the defendants argue that the plaintiffs' claims for punitive damages against the Municipal Defendants should be dismissed because such damages are unavailable as a matter of law.  We agree.

The law in this field has been settled since 1981, when the Supreme Court held that municipalities are immune from punitive damages for the bad-faith actions of their officials.  See City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 267-68 (1981); see also Doe v. County of Centre, 242 F.3d 437, 455 (3d Cir. 2001) (observing that City of Newport "stands for the proposition that municipalities, and more broadly, state and local governmental entities, are immune from punitive damages" under § 1983).  Given this well-settled principle of civil rights litigation, it will be recommended that the plaintiffs' claim for punitive damages be dismissed with respect

to Count IV of the complaint against the Municipalities and Chief Lewis in his official capacity.

## V.    RECOMMENDATION

Accordingly, for the foregoing reasons, IT IS HEREBY RECOMMENDED THAT the defendants' motions to dismiss (Docs. 7, 8) be granted in part and denied in part, as follows:

1.    Count I for malicious prosecution should be DISMISSED because this claim fails as a matter of law and is otherwise subject to *res judicata*.

2.    Officer Schmidt should be DISMISSED as a defendant, as he is named only in Count I of the complaint.

3.    The plaintiffs' claim for punitive damages against the Municipalities should be DISMISSED.

4.    In all other respects, the motion to dismiss should be denied at this time and the parties should be directed to proceed with discovery into the plaintiffs' remaining claims for unlawful arrest, excessive force, and municipal liability set forth in Counts II, III, and IV of the complaint.

The Parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen

(14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified  proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 10th day of February, 2014.


*S/Martin C.  Carlson*
Martin C. Carlson
United States Magistrate Judge