## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **KAMAR SAMUELS and** | : | **Civil No. 3:13-CV-2922** |
| **MOZELLA McCLENDON** | : | |
| **SAMUELS,** | : | **(Judge Caputo)** |
| | : | |
| **Plaintiffs** | : | **(Magistrate Judge Carlson)** |
| | : | |
| **v.** | : | |
| | : | |
| **POCONO MOUNTAIN** | : | |
| **REGIONAL POLICE** | : | |
| **DEPARTMENT, et al.,** | : | |
| | : | |
| **Defendants** | : | |

## REPORT AND RECOMMENDATION

## I.     INTRODUCTION AND BACKGROUND

The plaintiffs in this action, Kamar Samuels and his wife, Mozella McClendon Samuels, initiated this action by filing a complaint alleging that they have been subjected to repeated instances of harassment, racial profiling, and abusive conduct by police officers employed by the Pocono Mountain Regional Police Department (the "Police Department").  The plaintiffs specifically alleged that Mr. Samuels had been harassed by police and then falsely arrested on December 6, 2011, during which he was subjected to excessive and abusive force, including being subjected to the use of a Taser after he had already been handcuffed and was not resisting, acting in a threatening manner, or presenting any risk of flight.

The defendants subsequently moved to dismiss the complaint, and that motion was granted in part. The court dismissed the plaintiffs' claim for malicious prosecution and their claims for punitive damages against the municipal defendants, but otherwise denied the motion with respect to Counts II (unlawful arrest by Officer Miller), III (excessive force by Officer Miller), and IV (municipal liability). The parties proceeded to discovery on these claims. The plaintiffs subsequently agreed to withdraw all claims except for Mr. Samuels's claim in Count III for excessive force against Officer Miller.

The facts surrounding that claim are largely disputed. What is undisputed is that on the evening of December 6, 2011, Kamar Samuels was driving westbound on State Route 940. Officer Miller claims that Mr. Samuels was driving "suspiciously and erratically," and Officer Miller accordingly endeavored to pull Mr. Samuels over to issue a citation. The plaintiff maintains that he broke no traffic laws and was otherwise not driving suspiciously; instead, he claims that Officer Miller was following and harassing him, which caused Mr. Samuels to be frightened. There is no dispute that Officer Miller put on his flashing lights and ordered Mr. Samuels to pull over, and there is no dispute that Mr. Samuels ignored that direction and proceeded to drive to his house where he pulled into the garage. Officer Miller followed, joined by another officer, and a physical altercation ensued within the

garage. That altercation resulted in Mr. Samuels being handcuffed and placed under arrest, and it involved Officer Miller using his Taser on Mr. Samuels in front of Mr. Samuels's wife, after he had already been cuffed and in the custody of two officers. Nearly everything else about the plaintiff's and the defendant's conduct prior to and during that incident is disputed by the parties with competing citations to record evidence that the parties developed during discovery. (Docs. 37, 40, 41, 42, 45, 46, 49, 52, 53.)

The parties have now filed cross-motions for summary judgment on that remaining claim, with the plaintiff arguing that even accepting the facts in the light most favorable to Officer Miller, summary judgment in Mr. Samuels's favor is warranted because it was objectively unreasonable for an officer to use a Taser against a non-violent arrestee who was not resisting and who had already been searched and handcuffed. Officer Miller has also moved for summary judgment, arguing that the facts compel a finding that a reasonable officer confronted with similar circumstances would have used a similar amount of force, and hence there was no Fourth Amendment violation committed in the course of Mr. Samuels's arrest. Alternatively, Officer Miller argues that he is entitled to qualified immunity. (Docs. 36, 38.)

The motions are fully briefed and have been committed to the undersigned for purposes of preparing a report and recommendation. For the reasons that follow, it

will be recommended that the motions be denied and that the litany of factual disputes that surround this remaining claim be resolved by a jury at trial.

## II.   DISCUSSION

### A.   Standard of Review

The parties have filed competing motions for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, which provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a). Through summary adjudication a court is empowered to dispose of those claims that do not present a "genuine issue as to any material fact," Fed. R. Civ. P. 56, and for which a trial would be "an empty and unnecessary formality."  Univac Dental Co. v. Dentsply Int'l, Inc., No. 07-0493, 2010 U.S. Dist. LEXIS 31615, at *4 (M.D. Pa. Mar. 31, 2010).

The substantive law identifies which facts are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A dispute about a material fact is genuine only if there is a sufficient evidentiary basis that would allow a reasonable fact finder to return a verdict for the non-moving party.  Id. at 248-49.

4

The moving party has the initial burden of identifying evidence that it believes shows an absence of a genuine issue of material fact. Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 145-46 (3d Cir. 2004). Once the moving party has shown that there is an absence of evidence to support the nonmoving party's claims, "the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument." Berckeley Inv. Group. Ltd. v. Colkitt, 455 F.3d 195, 201 (3d Cir. 2006); accord Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). If the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial," summary judgment is appropriate. Celotex, 477 U.S. at 322. Summary judgment is also appropriate if the non-moving party provides merely colorable, conclusory, or speculative evidence. Anderson, 477 U.S. at 249. There must be more than a scintilla of evidence supporting the nonmoving party and more than some metaphysical doubt as to the material facts. Id. at 252; see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In making this determination, the Court must "consider all evidence in the light most favorable to the party opposing the motion." A.W. v. Jersey City Pub. Schs., 486 F.3d 791, 794 (3d Cir. 2007).

Moreover, a party who seeks to resist a summary judgment motion by citing to

disputed material issues of fact must show by competent evidence that such factual disputes exist. Further, "only evidence which is admissible at trial may be considered in ruling on a motion for summary judgment." Countryside Oil Co., Inc. v. Travelers Ins. Co., 928 F.Supp. 474, 482 (D.N.J.1995). Similarly, it is well-settled that: "[o]ne cannot create an issue of fact merely by . . . denying averments . . . without producing any supporting evidence of the denials." Thimons v. PNC Bank, NA, 254 F. App'x 896, 899 (3d Cir. 2007)(citation omitted). Thus, "[w]hen a motion for summary judgment is made and supported . . ., an adverse party may not rest upon mere allegations or denial." Fireman's Ins. Co. of Newark NJ v. DuFresne, 676 F.2d 965, 968 (3d Cir. 1982), see Sunshine Books, Ltd. v. Temple Univ., 697 F.2d 90, 96 (3d Cir. 1982). "[A] mere denial is insufficient to raise a disputed issue of fact, and an unsubstantiated doubt as to the veracity of the opposing affidavit is also not sufficient." Lockhart v. Hoenstine, 411 F.2d 455, 458 (3d Cir. 1969). Furthermore, "a party resisting a [Rule 56] motion cannot expect to rely merely upon bare assertions, conclusory allegations or suspicions." Gans v. Mundy, 762 F.2d 338, 341 (3d Cir. 1985)(citing Ness v. Marshall, 660 F.2d 517, 519 (3d Cir. 1981)). In particular, a plaintiff cannot avoid summary judgment by simply relying upon a self-declaration that he has authored which relies not on evidence, but on the plaintiff's own interpretation of events and, essentially, opinion testimony.  See Lujan v. Nat'l

6

Wildlife Fed'n, 497 U.S. 871, 888 (1990) (the nonmoving party may not defeat a properly supported summary judgment motion by simply substituting the "conclusory allegations of the complaint or answer with the conclusory allegations of an affidavit."); Iseley v. Beard, No. 02-2006, 2009 U.S. Dist. LEXIS 52014, *32 (M.D. Pa. Mar. 30, 2010) (conclusory allegations contradicted by documentary evidence cannot be accepted as true).

Finally, " '[w]hen confronted with cross-motions for summary judgment ... "the court must rule on each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the summary judgment standard. " ' Transguard Ins. Co. of Am., Inc. v. Hinchey, 464 F.Supp.2d 425, 430 (M.D.Pa.2006) (quoting Marciniak v. Prudential Fin. Ins. Co. of Am., 184 F. App'x 266, 270 (3d Cir.2006)). 'If review of [the] cross-motions reveals no genuine issue of material fact, then judgment may be entered in favor of the party deserving of judgment in light of the law and undisputed facts.' Id. (citing Iberia Foods Corp. v. Romeo, 150 F.3d 298, 302 (3d Cir.1998))." Pellicano v. Office of Pers. Mgmt., Ins. Operations, No. CIV.A. 11-405, 2014 WL 1268051 (M.D. Pa. Mar. 26, 2014) reconsideration denied sub nom. Pellicano v. Office of Pers. Mgmt., No. CIV.A. 11-405, 2014 WL 3565420 (M.D. Pa. July 18, 2014).

**B.    Disputed Issues of Material Fact Preclude Summary Judgment on Plaintiff's Fourth Amendment Excessive Force Claim**

7

As noted, following resolution of the earlier motion to dismiss and the plaintiff's withdrawal of most of his claims, the single remaining issue in the case is whether Officer Miller used excessive force against Kamar Samuels during the course of an arrest. There is no dispute that the confrontation between Officer Miller and Mr. Samuels included Officer Miller using his Taser against Mr. Samuels inside Mr. Samuels's garage, after Mr. Samuels had been handcuffed. The parties each claim that they are entitled to summary judgment in their favor on the plaintiff's claim that Officer Miller violated the Fourth Amendment by using unreasonable and excessive force in the course of securing and arresting Mr. Samuels.

We disagree.

"[A] free citizen's claim that law enforcement officials used excessive force in the course of making an arrest, investigatory stop, or other 'seizure' of his person . . . [is] properly analyzed under the Fourth Amendment's 'objective reasonableness' standard." Graham v. Connor, 490 U.S. 386, 388 (1986). Determining whether the force used to effect a seizure was reasonable under the Fourth Amendment requires a careful balancing of "the nature and quality of the intrusion of the individual's Fourth Amendment interests" against the government's interests in effecting the seizure. Id. at 396. The test is one of reasonableness, and thus a "court must determine the objective 'reasonableness' of the challenged conduct, considering the

severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officer or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Couden v. Duffy, 446 F.3d 483, 497 (3d Cir. 2006) (citation omitted); see also Sharrar v. Felsing, 128 F.3d 810, 822 (3d Cir. 1997). Included among the factors that may be relevant to this determination, courts may consider "the duration of the [officer's] action, whether the action takes place in the context of effectuating an arrest, the possibility that the suspect may be armed, and the number of persons with whom the police officers must contend at one time." Id. (internal quotations omitted). Courts are instructed that the surrounding events must be considered from "the perspective of a reasonable officer on the scene." Id.

In reviewing the parties competing factual summaries and memoranda supporting their motions, it is clear that they are in full agreement that Officer Miller followed Kamar Samuels's car for a relatively long period of time during which he endeavored to have Mr. Samuels pull his vehicle over, but Mr. Samuels disregarded the Officer's direction. They seem to agree that, instead, Mr. Samuels continued driving to his house, where he entered the garage prior to being physically restrained by Officer Miller. They also agree that Officer Miller eventually handcuffed Mr. Samuels, and that Officer Miller used his Taser on Mr. Samuels after he had been handcuffed and after he had been searched. However, the parties disagree about much

9

of what else that happened prior to this physical confrontation and, indeed, about much of what transpired inside the garage. The parties have, instead, presented starkly competing factual narratives that are each supported by evidence that the parties have supplied, chiefly in the form of their own testimony or other sworn statements about what occurred from their perspectives. The parties have each zealously advocated for their own perspective to be controlling here, and to warrant entry of summary judgment in their favor. However, the existence of these sharply contested factual scenarios is precisely why summary judgment is unwarranted for either party on Kamar Samuels's excessive force claim.

For their part, the defendants have argued that Officer Miller's use of his Taser on Mr. Samuels was reasonable based upon their view of the facts, for the following reasons:

- Mr. Samuels was observed to be driving erratically and suspiciously;

- Mr. Samuels had failed to obey verbal and non-verbal commands given by Officer Miller to pull over, instead proceeded for miles with the officers following him;

- Mr. Samuels entered his garage where he physically resisted Officer Miller's efforts to handcuff him, resulting in damage to Officer Miller's police cruiser;

- Mr. Samuels resisted efforts to be placed inside the police cruiser; and

- Mr. Samuels tensed his body and tried to turn and face the officer during

the course of the arrest, even after being handcuffed, causing Officer
Miller to believe that Mr Samuels continued to present some level of
threat to the arresting officers.

The defendants argue in their brief that Mr. Samuels's conduct throughout the
encounter justified the use of force as a matter of law, even the use of the Taser after
Mr. Samuels had been handcuffed with his hands behind his back and admittedly in
the custody of two police officers.  Thus, the defendants argue that, from Officer
Miller's perspective, that Mr. Samuels engaged in "suspicious and physically resistant
conduct," (Doc. 39 at p. 12); Mr. Samuels was "actively resisting arrest," (id. at p. 13),
Mr. Samuels had engaged in "erratic and suspicious behavior [which] was later
elevated to physical resistance during the arrest," (id. at p. 13); Mr. Samuels was a
"physically active suspect resisting arrest" (id. at p. 15); Mr. Samuels presented as a
"highly agitated and aggressive person who did not heed one command from law
enforcement, (id. at p. 16); and that Mr. Samuels's wife caused the situation to be
more "complex[ ]" because she "exhibited uncooperative conduct," (id.).  The
defendants argue that these somewhat general "facts" compel judgment in Mr.
Miller's favor, though they offer no legal authority holding that these facts, even if
true, would warrant summary judgment.

As the plaintiff notes, moreover, these factual assertions are far from
undisputed; indeed, they are almost entirely contradicted by other evidence and

testimony supplied by both Mr. and Mrs. Samuels.  Accordingly, the plaintiffs have

asserted in their own competing version of the events that:

- Mr. Samuels had not committed any traffic violations, but believed that he was being targeted and harassed by Officer Miller for miles prior to the officer activating his lights (Def. Tab A at pp. 3, 66-68);

- Mr. Samuels was not intoxicated or otherwise impaired, and was never subjected to a breathalyzer or other field sobriety testing that would have confirmed the allegation that he was under the influence of any substance (Def. Tab A at pp. 70-71; Tab C at pp. 41-42; Tab D at p. 36);

- Mr. Samuels was compliant with verbal commands because he was scared and feared being shot by two officers who had drawn their firearms (Def. Tab A at pp. 70-71; Tab C at pp. 41-42; Tab D. at p. 36);

- Mr. Samuels never yelled or raised his voice, whereas Officer Miller was yelling, screaming and using profanity during the incident (Def. Tab A at p. 75);

- Mr. Samuels was not belligerent or uncooperative (Def Tab B at pp. 13-17, 20-21, 32, 37; Tab C at pp. 122-23);

- Mrs. Samuels was silent until Officer Miller used his Taser against Mr. Samuels (Def Tab B at p. 37);

- Mr. Samuels did not tense his body or otherwise resist Officer Miller's attempts to place handcuffs on him (Def. Tab A at pp. 73-74);

- Mr. Samuels did not do anything to damage Officer Miller's police cruiser (Def. Tab A at pp. 73-75);

- Mr. Samuels did not resist the officers' efforts to have him placed in the police cruiser (Def. Tab A at pp. 76-78);

- Prior to being shocked with the Taser, Mr. Samuels did not try to strike Officer Miller in any fashion (Def. Tab A at pp. 76-77); and

- Mr. Samuels never made any act of physical aggression towards Officer Miller or acted in any way that would have suggested that he was attempting to inflict bodily harm against Officer Miller (Def. Tab A at p. 77).

It is impossible to escape the conclusion that the facts and circumstances surrounding the encounter between Officer Miller and Mr. Samuels are in sharp dispute, and are incapable of being resolved on the summary judgment record. Simply considering some of the relevant factors identified in Graham makes clear that this case is not suitable for summary judgment in favor of either Officer Miller or the plaintiff. As noted, the Graham totality-of-the-circumstances test commends analysis of, inter alia, (1) the severity of the crimes at issue, (2) whether the arrestee posed an imminent threat to the safety of police officers or others in the vicinity, and (3) whether the arrestee was attempting to resist arrest or flee the scene. See Santini v. Fuentes, 795 F.3d 410, 420 (3d Cir. 2015) (applying Graham factors in assessing whether officer violated arrestee's Fourth Amendment rights by using excessive force).

Considering these factors in the light most favorable to Mr. Samuels, we believe that a jury could find that many or all of them weigh in his favor. Thus, when considering the severity of the crime at issue, it was relatively minor and apparently involved a simple traffic violation. From Officer Miller's perspective, however, Mr.

Samuels greatly exacerbated the circumstances when he refused to pull his car over and instead, disregarded the officer's instructions to stop continued driving to his house. Of course, however, from Mr. Samuels's perspective, he had not committed any traffic offense and believed that he was being harassed and racially profiled. In any event, the undisputed facts do not compel a finding that Mr. Samuels was being pursued because he was suspected of having committed particularly severe offenses.

The parties disagree about whether Mr. Samuels posed a threat to the safety of the police officers or anyone else. There is clearly a dispute in the record about whether Mr. Samuels was actively resisting the commands of officers in the garage, and whether he physically resisted their efforts to place him under arrest. What is something of a closer issue is whether there is really any evidence to show that Mr. Samuels was actively attempting to resist or evade arrest by the time he was subjected to Officer Miller's Taser. Indeed, it is undisputed that Mr. Samuels had already been searched and was handcuffed with his hands behind his back at the time he was Tasered. (Def. Tab A at pp. 73-75; Tab B at pp. 20-21; Tab C at p. 37; Tab D at pp. 40-41, 45.) According to the evidence, Officer Miller used his Taser against Mr. Samuels because he had refused to comply with a verbal command, or perhaps because he had tensed some of his muscles – something that Mr. Samuels disputes. Furthermore, at the time, Officer Miller was supported by another officer on the scene

14

who was assisting with the arrest, and Mr. Samuels maintains that he was not doing anything to fight the officers or attempt to escape their control when he was shocked with the Taser.  (Def. Tab C at pp. 30-31, 35-36, 52, 54, 70-71, 128-29; Tab D at 43.) Other evidence from Officer Miller himself could undermine his assertion that he used reasonable force, or that the use of his Taser was justified, since in his own report he did not indicate that Mr. Samuels had assumed an "Aggressive Posture" or "Attacked Officer" – boxes that he could have checked in his report.   (Def. Tab C at p. 82; Tab D at pp. 66-67.)

With respect to whether there was fear of Mr. Samuels attempting to evade arrest or flee, the evidence taken in the light most favorable to the plaintiff supports his claims and may substantially undermine Officer Miller's use of force, since even Officer Miller acknowledged that Mr. Samuels "didn't have [the] opportunity" to run away at the time he was Tased. (Def. Tab C at p. 82.)

In addition, we agree with the plaintiff there is relatively little evidence in the record to suggest that he was known or believed to be violent or dangerous, or that he had a history of violence.  Officer Miller acknowledged that Mr. Samuels had no prior encounters with him or with the Police Department, and Officer Miller admitted that he did not know anything about Mr. Samuels prior to this incident.  (Def. Tab. C at p. 82.)  While the evidence could show that Mr. Samuels was refusing to obey police

orders and disregarding efforts to have him stop his vehicle, Officer Miller also acknowledges that he had no reason to believe that Mr. Samuels had been involved in any other kind of serious criminal activity. (Def. Tab C. at p. 45.)

The plaintiff would have the Court review the facts in the record and pronounce a bright-line rule that would find under the circumstances that the use of a Taser violated the Fourth Amendment as a matter of law because it was used after Mr. Samuels had been handcuffed. Although Mr. Samuels has marshaled considerable evidence to support this claim, we are unable to conclude that Mr. Samuels is entitled to summary judgment on his claim because we believe that a jury should first consider all of the facts from the perspectives of both parties before reaching a determination on whether the use of force in this case was unreasonable. Included among these facts that should be considered is Officer Miller's representation that even after Mr. Samuels had been handcuffed, he continued to try to turn and face the officer and resisted instructions, which potentially might have caused Officer Miller to believe that a one-time use of the Taser in an effort to get the plaintiff to comply was justified and reasonable. The jury will also be presented with evidence that may substantially undermine Officer Miller's stated justification for using his Taser under the circumstances, as he himself testified that Mr. Samuels did not assume an aggressive posture, or make as though he was going to fight the officer. Indeed, Officer Miller

testified at his deposition that he did not feel as though his safety was threatened and that Mr. Samuels never laid a hand on him, but decided to use his Taser anyway because he had refused a command.  (Def. Tab C at pp. 82-83.)  Officer Chaffee, who was present during the incident, and who was holding Mr. Samuels with his handcuffed hands behind his back, similarly testified that Mr. Samuels was not physically confrontational, did not swing at officers, did not spit or lunge or even attempt to make physical contact with them.  (Def. Tab. D at pp. 40-41,  52, 69.)

We find it inappropriate to provide the Court's views regarding which parties' competing interpretation of these circumstances was more persuasive or  reasonable because such a course would necessarily require the Court first to resolve facts and circumstances which are themselves in dispute.  Instead, where material factual assertions are supported by contradictory evidence, summary judgment is inappropriate and the disputed facts should be resolved by a jury after hearing all of the evidence from the parties.  See, e.g., Turosik v. Hougue, 2011 U.S. Dist. LEXIS 27928, at *23-25 (W.D. Pa. Mar. 18, 2011) (denying summary judgment on excessive force claim where there were factual disputes regarding the events leading to the plaintiff's arrest); Bowman v. Reilly, 2010 U.S. Dist. LEXIS 19307, at **17-24 (E.D. Pa. Mar. 4, 2010); Bodnar v. Wagner, 2010 U.S. Dist. LEXIS 289, *8-10 (M.D. Pa. Jan. 5, 2010); Ferguson v. Pennsylvania, 2009 U.S. Dist. LEXIS 20099, at *10-11

(W.D. Pa. Mar. 12, 2009) (denying summary judgment because a jury could believe the plaintiff's version of the events); Frederick v. Hanna, 2006 U.S. Dist. LEXIS 87037, at *18 (W.D. Pa. Nov. 1, 2006) (denying summary judgment on excessive force claim where there was a dispute in the record based on testimony and disagreement on chronology of events).   Accordingly, we recommend that both parties' motions for summary judgment on Mr. Samuels's remaining claim for excessive force be denied.

### C.     Officer Miller is Not Entitled to Qualified Immunity

Officer Miller argues that even if the Court finds he is not entitled to summary judgment on Mr. Samuels's excessive force claim, he should nevertheless be granted qualified immunity.   We disagree, for essentially the same reasons as articulated above.

"An official sued under [42 U.S.C.] § 1983 is entitled to qualified immunity unless it is shown that the official violated a statute or constitutional right that was 'clearly established' at the time of the challenged conduct." Plumhoff v. Rickard, 134 S. Ct. 2012, 2023 (2014) (quoting Ashcroft v. al-Kidd, 563 U.S. 731, __, 131 S. Ct. 2074, 2080, 179 L. Ed. 2d 1149 (2011)).   The doctrine protects public officials "from undue interference with their duties and from potentially disabling threats of liability." Wright v. City of Philadelphia, 409 F.3d 595, 599 (3d Cir. 2005).   In accordance with

this doctrine, government officials will be immune from suit in their individual capacities unless, "taken in the light most favorable to the party asserting the injury, . . . the facts alleged show the officer's conduct violated a constitutional right" and "the right was clearly established" at the time of the objectionable conduct.  Saucier v. Katz, 533 U.S. 194, 201 (2001).  Courts are not to "'define clearly established law at a high degree of generality' . . . since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced." Plumhoff, 134 S. Ct. at 2023 (quoting al-Kidd, 131 S. Ct. at 2074). Courts may exercise their discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in consideration of the circumstances presented by the particular case at hand.  Pearson v. Callahan, 555 U.S. 223, 129 S. Ct. 808, 818 (2009).

"The relevant dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."  Saucier, 533 U.S. at 202.  This inquiry "must be undertaken in light of the specific context of the case."  Id. at 201. Accordingly, "to decide whether a right was clearly established, a court must consider the state of the existing law at the time of the alleged violation and the circumstances confronting the officer to determine whether a reasonable state actor could have

believed his conduct was lawful." Kelly v. Borough of Carlisle, 622 F.3d 248, 253 (3d Cir. 2010).

The right to be free from excessive force during the course of an arrest is well established and has been for some time. See Graham, 490 U.S. at 394-95. The Third Circuit Court of Appeals requires that courts undertake an analysis of the factors identified in Graham and Sharrar to determine whether the amount of force used during a seizure was warranted, and has concluded that those factors are well established and that "a reasonable officer would be guided by them." Estate of Smith v. Marasco, 430 F.3d 140, 150 (3d Cir. 2005). Accordingly, "[a]n officer who applies those factors unreasonably is not entitled to qualified immunity." O'Donnell v. Tinicum Twp., 2015 U.S. Dist. LEXIS 75881, at *18 (E.D. Pa. June 11, 2015) (citing Estate of Smith, 430 F.3d at 150).

As another district court recently noted, "[t]o be sure, there are situations in which application of the Graham and Sharrar factors is unclear, so that an officer's misapplication of the factors to the circumstances cannot be said to be unreasonable. On the facts presented on summary judgment here, however, this is not one of them." O'Donnell, 2015 U.S. Dist. LEXIS 75881, at *18. That is the case here, where there are significant disputed issues of fact in the record that, taken in the light most favorable to the plaintiff, would not support a finding that Officer Miller applied the

Graham and Sharrar factors reasonably in deciding to deploy his Taser and to administer a shock to Mr. Samuels after he had already been handcuffed and secured. We recognize that Officer Miller disputes Mr. Samuels's characterization of some of the facts and the circumstances that took place in the garage leading up to and during the arrest, but if those facts are all resolved in Mr. Samuels's favor, then Officer Miller could not reasonably have believed that his use of force was reasonable or permissible under the circumstances.

Likewise this question of qualified immunity turns in large measure on a determination of Officer Miller's motives when he tasered Mr. Samuels. When confronting a claim of qualified immunity which is premised upon factual disputes regarding human motivation we are reminded that: "Although qualified immunity is a question of law determined by the Court, when qualified immunity depends on disputed issues of fact, those issues must be determined by the jury. See Johnson v. Jones, 515 U.S. 304, 313, 115 S.Ct. 2151, 132 L.Ed.2d 238 (1995) (qualified immunity may turn on disputed issues of fact); Karnes v. Skrutski, 62 F.3d 485, 491 (3d Cir.1995) ("While the qualified immunity defense is frequently determined by courts as a matter of law, a jury should decide disputed factual issues relevant to that determination."). Motive is a question of fact that must be decided by the jury, which has the opportunity to hear the explanations of both parties in the courtroom and

observe their demeanor. <u>See Mitchell v. Forsyth</u>, 472 U.S. 511, 529, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985) (improper intent is a pure question of fact); <u>Walker v. Horn</u>, 286 F.3d 705, 710 (3d Cir.2002)." <u>Monteiro v. City of Elizabeth</u>, 436 F.3d 397, 405 (3d Cir. 2006).

At minimum, we find that a determination of whether Officer Miller would be entitled to qualified immunity is necessarily dependent upon the resolution of a number of relevant facts that are currently in dispute and which should be resolved at trial. <u>See, e.g.</u>, <u>Turosik v. Hougue</u>, 2011 U.S. Dist. LEXIS 27928, at *23-25 (W.D. Pa. Mar. 18, 2011) (denying summary judgment on excessive force claim where there were factual disputes regarding the events leading to the plaintiff's arrest); <u>Bowman v. Reilly</u>, 2010 U.S. Dist. LEXIS 19307, at **17-24 (E.D. Pa. Mar. 4, 2010); <u>Bodnar v. Wagner</u>, 2010 U.S. Dist. LEXIS 289, *8-10 (M.D. Pa. Jan. 5, 2010); <u>Ferguson v. Pennsylvania</u>, 2009 U.S. Dist. LEXIS 20099, at *10-11 (W.D. Pa. Mar. 12, 2009) (denying summary judgment because a jury could believe the plaintiff's version of the events); <u>Frederick v. Hanna</u>, 2006 U.S. Dist. LEXIS 87037, at *18 (W.D. Pa. Nov. 1, 2006) (denying summary judgment on excessive force claim where there was a dispute in the record based on testimony and disagreement on chronology of events) It is therefore recommended that the Court deny Officer Miller's request for summary judgment on the basis of qualified immunity.

## III.   RECOMMENDATION

Accordingly, for the foregoing reasons, it is recommended that the parties' motions for summary judgment, (Docs. 36 and 38), on the plaintiff's sole remaining claim for excessive force against Officer Miller (Count III) be DENIED.

The parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified  proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 17th day of December, 2015.

*/s/ Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge