# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

KAMAR SAMUELS and MOZELLA McCLENDON SAMUELS,

    Plaintiffs,

    v.

POCONO MOUNTAIN REGIONAL POLICE DEPARTMENT, et al.,

    Defendants.

CIVIL ACTION NO. 3:13-CV-02922

(JUDGE CAPUTO)

(MAGISTRATE JUDGE CARLSON)

## **MEMORANDUM**

Presently before me is the Report and Recommendation of Magistrate Judge Carlson (Doc. 54) with respect to summary judgment motions filed by both Plaintiff Kamar Samuels ("Plaintiff") and Defendant Officer Robert Miller ("Defendant") regarding Plaintiff's excessive force claim. (Docs. 36 & 38). Magistrate Judge Carlson recommends that both motions be denied because material facts remain in dispute as to (1) whether Defendant acted reasonably in deploying his TASER on Plaintiff after Plaintiff was already handcuffed and (2) Defendant's underlying motivation in deploying his TASER. Because I find that material facts remain in dispute with regard to whether Defendant acted reasonably in deploying his TASER on Plaintiff, I will adopt the Report and Recommendation in part and deny both parties' motions for summary judgment.

## I. Background

On December 6, 2011, Plaintiff was driving westbound on State Route 940. Defendant claims that Plaintiff was driving "suspiciously and erratically," and therefore followed Plaintiff and attempted to pull him over to issue a citation. Plaintiff maintains that he did not break any traffic laws and was not driving suspiciously. Defendant turned on his flashing lights and ordered Plaintiff to pull over, and it is undisputed that Plaintiff refused to pull over. Defendant continued to follow Plaintiff, joined by another officer, Officer Derek Chaffee ("Officer Chaffee"). Yet, Plaintiff continued to ignore Defendant and continued

driving, refusing to pull over.

Plaintiff ultimately drove his vehicle into the Greenwood Acres development in Blakeslee.  Plaintiff pulled into a driveway located at 171 Birchwood Drive, opening the automatic garage door and entering the garage with Defendant and Officer Chaffee following, with their lights and sirens activated.  Because Plaintiff's vehicle registration did not match the residence he was entering,[1] Defendant was concerned as to whether a home invasion was occurring and did not know the status of the inhabitants of the home.  Defendant was also concerned that Plaintiff could be arming himself or was already armed.  Although Plaintiff proceeded to close the automatic garage door, Defendant physically prevented the garage door from closing while at the same time loudly commanding Plaintiff to show his hands.  Plaintiff disregarded these commands and walked toward the door leading into the home with his hands unraised.  An altercation ensued, and the facts leading up to this altercation are largely in dispute.  At some point later, Defendant attempted to handcuff Plaintiff.  Although Defendant maintains that Plaintiff continually resisted arrest–yelling, pulling away, and tensing his body–this fact is disputed.  Defendant also highlights the fact that Plaintiff is six feet three inches (6'3") in height and weighs approximately two hundred and ten (210) pounds.

Defendant was ultimately able to pin Plaintiff against his car and place Plaintiff in handcuffs.  Defendant then escorted Plaintiff to the passenger side rear door of his police cruiser, all while Plaintiff continued to yell.  With the passenger door of the police cruiser open, Defendant directed Plaintiff to sit inside.  However, Defendant maintains that Plaintiff resisted this command by tensing his body to such a degree that he could not be placed

---

[1] Defendant was advised by the Monroe County Communications Center that the registration of Plaintiff's vehicle corresponded with an East Stroudsburg address, and was not correlated with the address within Greenwood Acres. (Doc. 42-6, Defendant's Tab F, Declaration of Detective Robert Miller, at 3-4.)

into the police cruiser. This fact is also disputed. Repeated requests to sit inside the vehicle were refused by Plaintiff, who physically continued to tense up his body.

In light of Plaintiff's physical resistance, Defendant withdrew his TASER and informed Plaintiff that if he did not cease his physical resistance and sit in the vehicle, he would deploy his TASER. Defendant maintains that Plaintiff continued to physically resist, though Plaintiff denies this. Defendant then yelled "TASER UP," stepped away from Plaintiff, and deployed the TASER. Defendant stunned Plaintiff in his lower right leg, which resulted in Plaintiff's immediate incapacitation. Plaintiff was on the ground and compliant at all times thereafter. Both parties filed cross-motions for summary judgment as to whether Defendant's use of his TASER on Plaintiff after Plaintiff was already handcuffed constitutes excessive force. Defendant also seeks summary judgment on the ground that he is entitled to qualified immunity.

On December 17, 2015, Magistrate Judge Carlson issued the instant Report and Recommendation, recommending that both parties' motions for summary judgment be denied. (Doc. 54.) On December 31, 2015, both parties filed timely objections to the Report and Recommendation (Docs. 55 & 57) and on January 13, 2016, both parties filed responses to each other's objections (Docs. 59 & 60). The briefs are now ripe for disposition.

## II. Legal Standards

**A.   Legal Standard in Reviewing a Report and Recommendation**

Where objections to the Magistrate Judge's Report and Recommendation are filed, the district court must conduct a *de novo* review of the contested portions of the report. *Sample v. Diecks*, 885 F.2d 1099, 1106 n.3 (3d Cir.1989) (citing 28 U.S.C. § 636(b)(1)(C)). However, this only applies to the extent that a party's objections are both timely and specific. *Goney v. Clark*, 749 F.2d 5, 6–7 (3d Cir.1984). In conducting a *de novo review*, the court may accept, reject, or modify, in whole or in part, the factual

findings or legal conclusions of the magistrate judge.  28 U.S.C. § 636(b)(1); *Owens v. Beard*, 829 F. Supp. 736, 738 (M.D. Pa. 1993).  Although the review is *de novo*, the law permits the court to rely on the recommendations of the magistrate judge to the extent it deems proper.  *United States v. Raddatz*, 447 U.S. 667, 675–76 (1980); *Goney*, 749 F.2d at 7.  Uncontested portions of the report may be reviewed at a standard determined by the district court.  *See Thomas v. Arn*, 474 U.S. 140, 154 (1985).  At the very least, the court should review uncontested portions for clear error or manifest injustice.  *Cruz v. Chater*, 990 F. Supp. 375, 376–77 (M.D. Pa. 1998).

**B.   Legal Standard for Summary Judgment**

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  *Wright v. Corning*, 679 F.3d 101, 103 (3d Cir. 2012) (quoting *Orsatti v. N.J. State Police*, 71 F.3d 480, 482 (3d Cir. 1995)).  A fact is material if proof of its existence or nonexistence might affect the outcome of the suit under the applicable substantive law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Where there is no material fact in dispute, the moving party need only establish that it is entitled to judgment as a matter of law.  *See Edelman v. Comm'r of Soc. Sec.*, 83 F.3d 68, 70 (3d Cir. 1996).  Where, however, there is a disputed issue of material fact, summary judgment is appropriate only if the factual dispute is not a genuine one. *Anderson*, 477 U.S. at 247-48.  An issue of material fact is genuine if "a reasonable jury could return a verdict for the nonmoving party."  *Id*. at 248.  Where there is a material fact in dispute, the moving party has the initial burden of proving that:  (1) there is no genuine issue of material fact; and (2) the moving party is entitled to judgment as a matter of law.  *See Howard Hess Dental Labs., Inc. v. Dentsply Int'l, Inc.*, 602 F.3d 237,

251 (3d Cir. 2010).  The moving party may present its own evidence or, where the non-moving party has the burden of proof, simply point out to the court that "the nonmoving party has failed to make a sufficient showing on an essential element of her case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

When considering whether there are genuine issues of material fact, the court is required to "examine the evidence of record in the light most favorable to the party opposing summary judgment, and resolve all reasonable inferences in that party's favor." *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007).  Once the moving party has satisfied its initial burden, the burden shifts to the non-moving party to either present affirmative evidence supporting its version of the material facts or to refute the moving party's contention that the facts entitle it to judgment as a matter of law.  *Anderson*, 477 U.S. at 256-57.  The Court need not accept mere conclusory allegations, whether they are made in the complaint or a sworn statement.  *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990).

In order to prevail on a motion for summary judgment, the non-moving party must show "specific facts such that a reasonable jury could find in that party's favor, thereby establishing a genuine issue of fact for trial."  *Galli v. N.J. Meadowlands Comm'n*, 490 F.3d 265, 270 (3d Cir. 2007) (citing Fed. R. Civ. P. 56(e)).  Although the non-moving party's evidence may be either direct or circumstantial, and "need not be as great as a preponderance, the evidence must be more than a scintilla."  *Id*. (quoting *Hugh v. Butler Cnty. Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005)).  In deciding a motion for summary judgment, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  *Anderson*, 477 U.S. at 249.

### III. Discussion

The sole issue I must evaluate is whether summary judgment is appropriate for either party on Plaintiff's excessive force claim against Defendant for his use of a TASER on Plaintiff after Plaintiff was already in handcuffs.  Specifically, I must decide

whether it was objectively reasonable for Defendant to deploy his TASER on Plaintiff under the circumstances and whether Defendant was entitled to qualified immunity.

A.     **Excessive Force**

Pursuant to 42 U.S.C. § 1983, the use of excessive force to effectuate an arrest violates a suspect's Fourth Amendment rights. *Graham v. Connor*, 490 U.S. 386, 395-96 (1989). Excessive force must be examined objectively under the totality of the circumstances because officers must use force that is objectively reasonable from the perspective of a reasonable officer. *Id.* at 396-97. The totality of the circumstances inquiry set forth in *Graham* identified specific factors for courts to consider, including: (1) the severity of the crime, (2) the "immediate threat" posed by the suspect to officers or others, and (3) whether the suspect was "actively resisting arrest" or "evad[ing] arrest by flight." *Graham*, 490 U.S. at 396. The Third Circuit Court of Appeals has expanded this list of factors to also include: (1) whether the suspect is "violent or dangerous," (2) the duration of the force, (3) whether the force was used to make an arrest, (4) the "possibility" that the suspect is armed, and (5) the number of people with whom the police must contend. *Sharrar v. Felsing*, 128 F.3d 810, 822 (3d Cir. 1997). Factors that should ***not*** be considered include the "officer's intentions and motivations, be they good or bad." *Patrick v. Moorman*, 536 F. App'x 255, 259 (3d Cir. 2013) (citing *Graham*, 490 U.S. at 397); *see also Graham*, 490 U.S. at 396-97 ("An officer's evil intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force; nor will an officer's good intentions make an objectively unreasonable use of force unconstitutional.").[2] This objective analysis cannot be skewed by 20/20 hindsight because courts must appreciate that officers are forced to make split-second decisions in rapidly evolving situations. *Graham*, 490 U.S. at 396-97. Because there are still material facts that are in dispute that must be resolved before deciding whether

---

[2] For this reason, any consideration Magistrate Judge Carlson gave to any factual dispute regarding Defendant's underlying motivation in his decision to deploy his TASER on Plaintiff is irrelevant and will not be adopted. (*See* Doc. 54, at 21-22.)

6

Defendant acted reasonably in choosing to deploy a TASER on Plaintiff, both parties' motions for summary judgment will be denied.

There is no question that Defendant deployed his TASER on Plaintiff after Plaintiff was already restrained in handcuffs with his hands behind his back. (Doc. 37, Plaintiff's Statement of Material Facts, ¶¶ 36-37; *see also* Doc. 45, Defendants' Answer to Plaintiff's Statement of Material Facts, ¶ 36-37 (admitting this statement).) Defendant also concedes that "a handcuffed suspect who passively refuses to obey an officer's verbal commands should never be Tasered to gain compliance." (Doc. 39, at 15.) However, contrary to Plaintiff's assertions, Defendant asserts "[t]hat simply did not occur here." (*Id.*) Defendant maintains that he was "confronted with a physically active suspect resisting arrest," not just a passive refusal to obey verbal commands. (*Id.*) Therefore, there is a genuine issue of material fact with respect to whether Plaintiff posed an "immediate threat," whether Plaintiff was "actively resisting arrest," and whether Plaintiff was "violent or dangerous," all of which are factors to be considered in determining whether Defendant used excessive force on Plaintiff. *Sharrar*, 128 F.3d at 822. Specifically, Defendant testified in his deposition, in response to a question about why he deployed his TASER on Plaintiff, that Plaintiff was "actively resisting," and that "[w]hen somebody is actively resisting arrest, that is a potential for harm for me and everybody else around." (Doc. 36-2, Plaintiff's Ex. A, 52:3-13.)

Although when asked if Plaintiff tried to attack Defendant, Defendant testified that "[h]e couldn't have," that does not automatically mean that his use of the TASER constituted excessive force. The issue of whether an officer used excessive force does not turn on whether the plaintiff attacked him. Such a rule would force officers to wait until they are physically attacked by a suspect before utilizing force. This simply cannot be. The mere fact that a suspect did not actually attack the officer yet does not preclude an officer's reasonable belief that the suspect poses a threat to others. Additionally, as explained above, a number of other factors must be considered, such as whether there was an immediate threat to others (not just the defendant officer) and whether Plaintiff

was resisting arrest. *Sharrar*, 128 F.3d at 822.

Plaintiff asserts that Defendant deployed his TASER on Plaintiff for Plaintiff's refusal to comply with a verbal command, which constitutes "passive resistance." (Doc. 37, Plaintiff's Statement of Material Facts, ¶ 34.) Both parties agree that Defendant would not have been permitted to deploy his TASER on Plaintiff for mere "passive resistance."[3] However, Defendant denies that this was the sole reason for his decision to deploy his TASER. (Doc. 45, Defendants' Answer to Plaintiff's Statement of Material Facts, ¶ 34.) Specifically, Defendant maintains that after Plaintiff was handcuffed, Defendant attempted to move Plaintiff into the police cruiser and instructed Plaintiff to sit inside. However, according to Defendant, Plaintiff demonstrated continued physical resistance, "tensing his body to such a degree that he could not be placed into the police cruiser." (Doc. 42-6, Tab F, Declaration of Detective Robert Miller, ¶ 44; *see also id.* ¶¶ 43-48.) In addition to this physical resistance, Plaintiff had been yelling and violently resisting Defendant's efforts to handcuff him, which "heightened [Defendant's] concern significantly." (Doc. 42-6, Tab F, Declaration of Detective Robert Miller, ¶ 36.) Defendant also noted that while attempting to handcuff Plaintiff, Plaintiff attempted to turn his body toward Defendant, which, based on Defendant's training, caused him to

---

[3] The Department TASER Policy, Number 6-8 (the "Policy"), which became effective on May 12, 2009, states that:

An officer may draw and discharge the X26 [TASER] at a subject when the officer reasonably believes that the subject is actively resistant, threatening, etc.; and the officer reasonably believes that the subject possesses the ability or apparent ability and opportunity to carry out that threat.

(Doc. 37, Plaintiff's Statement of Material Facts, ¶ 29; Doc. 45, Defendants' Answer to Plaintiff's Statement of Material Facts, ¶ 29.) The Policy further states that other considerations for deployment of the X26 [TASER] are (1) an imminent threat to officers and/or others, (2) severity of the incident at issue, (3) the totality of the circumstances, and (4) level of resistance or threatening harm. (Doc. 37, ¶ 30; Doc. 45, ¶ 30.)

The Policy further states that the X26 [TASER] will ***not*** be used in cases of (1) "passive resistance unless the officer reasonably believes that a lesser level of force would be ineffective, or attempting to use a lesser level of force would be likely to jeopardize the safety of the subject and/or others," or (2) "[a]gainst a person already restrained unless serious physical aggression has to be overcome which cannot readily and/or safely be overcome by lesser measures." (Doc. 37, ¶ 31; Doc. 45, ¶ 31.)

8

"fear[] being kicked or other physical potential from [Plaintiff]." (*Id.* ¶ 33.) Plaintiff maintains that he was not physically violent and did not pose a threat to anyone.

There is no escaping that the facts surrounding the nature and extent of Plaintiff's resistance to Defendant's attempt to arrest him are in dispute. Therefore, I cannot yet determine that Defendant acted reasonably in deploying his TASER, nor can I conclusively determine that his use of the TASER constituted excessive force. Accordingly, granting summary judgment in favor of either party would be inappropriate at this time.

**B.    Qualified Immunity**

Defendant argues that even if he is not entitled to summary judgment on Plaintiff's excessive force claim, he should nevertheless be granted qualified immunity. "An official sued under [42 U.S.C.] § 1983 is entitled to qualified immunity unless it is shown that the official violated a statute or constitutional right that was 'clearly established' at the time of the challenged conduct." *Plumhoff v. Rickard*, 134 S. Ct. 2012, 2023 (2014). For qualified immunity to attach, an official must demonstrate that his conduct was objectively reasonable. *Harlow v. Fitzgerald*, 457 U.S. 800, 818-19 (1981). This inquiry involves two (2) prongs: (1) determining whether the plaintiff's constitutional or statutory rights were in fact violated, and (2) determining whether it would have been clear to a reasonable officer that the conduct was unlawful in light of "clearly established" law. *Saucier v. Katz*, 533 U.S. 194, 201-02 (2001). Courts may exercise their discretion in deciding which of these two (2) prongs should be addressed first. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009); *Reedy v. Evanson*, 615 F.3d 197, 224 n.36 (3d Cir. 2010). Accordingly, I may determine whether any rights were clearly established before determining whether any rights were violated. *Pearson*, 555 U.S. at 236.

The right to be free from excessive force during the course of an arrest is well established and has been for some time. *See Graham*, 490 U.S. at 394-95. The Third Circuit Court of Appeals requires that courts undertake an analysis of the *Graham* and

*Sharrar* factors to determine whether the amount of force used during a seizure was warranted and has concluded that those factors are well established and that a reasonable officer would be guided by them. *Estate of Smith v. Marasco*, 430 F.3d 140, 150 (3d Cir. 2005). Accordingly, an officer who applies those factors unreasonably is not entitled to qualified immunity. *Id.*

As another district court recently noted, however, there will be "situations in which application of the *Graham* and *Sharrar* factors is unclear, so that an officer's misapplication of the factors to the circumstances cannot be said to be unreasonable." *O'Donnell v. Tinicum Twp.*, 110 F. Supp. 3d 571, 579 (E.D. Pa. June 11, 2015). That is the case here, where under the Defendant's version of the facts, any misapplication of the factors to the circumstances there may have been cannot be said to have been unreasonable. However, when viewing the facts in the light most favorable to the plaintiff, which I must do on Defendant's summary judgment motion, Defendant could not reasonably have believed that his use of force was reasonable or permissible under the circumstances. Accordingly, summary judgment cannot yet be granted in favor of Defendant on the qualified immunity issue until these factual disputes are resolved by a jury. In cases like this one, where "[t]he facts relevant to establishing whether defendant's manner of effectuating plaintiff's arrest was reasonable are rife with issues of credibility," granting summary judgment on a claim of qualified immunity would be inappropriate. *Turosik v. Hougue*, No. 08-1248, 2011 WL 1044648, at *11 (W.D. Pa. Mar. 18, 2011) (denying summary judgment on excessive force claim where there were factual disputes regarding the events leading to the plaintiff's arrest); *see also Monteiro v. City of Elizabeth*, 436 F.3d 397, 405 (3d Cir. 2006) ("Although qualified immunity is a question of law determined by the Court, when qualified immunity depends on disputed issues of fact, those issues must be determined by the jury.") (citing *Johnson v. Jones*, 515 U.S. 304, 313 (1995)); *Bowman v. Reilly*, No. 09-1322, 2010 WL 831412, at *8-*9 (E.D. Pa. Mar. 4, 2010) (denying summary judgment because "disputed historical facts material to the qualified immunity question" remained) (citation and internal quotation

marks omitted); *Frederick v. Hanna*, No. 05-514, 2006 WL 3489745, at *6 (W.D. Pa. Dec. 1, 2006) (denying claim to qualified immunity regarding the defendant's use of force because "evaluation of the situation confronted by Defendant, as well as the precise nature of his conduct, rests on disputed facts that must be resolved by a jury"). Accordingly, Defendant's motion for summary judgment on qualified immunity will be denied.

## IV. Conclusion

For the above stated reasons, both parties' motions for summary judgment will be denied.

An appropriate order follows.


March 29, 2016                                           /s/ A. Richard Caputo
Date                                                     A. Richard Caputo
                                                         United States District Judge